**Opinion issued March 19, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-01108-CV

———————————

## CITY OF FREEPORT, Appellant

## V.

## BRIARWOOD HOLDINGS, L.L.C., Appellee

On Appeal from the 239th District Court
Brazoria County, Texas
Trial Court Case No. 55780

## MEMORANDUM OPINION

The City of Freeport brings this interlocutory appeal challenging the trial court's denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. §51.014(a)(8) (West Supp. 2012). Briarwood sued the City and the Freeport

Economic Development Corporation (FEDC) to set aside a deed to real property from FEDC to the City and to have the real property conveyed to Briarwood, asserting claims for common-law and statutory fraud, and trespass. Briarwood also sued FEDC for breach of lease. Briarwood sought specific performance and attorney's fees for breach of contract or, alternatively, money damages for the value of the property and lost rent, lost profits, and diminution in value of adjacent properties.

The City and FEDC filed a plea to the jurisdiction, although FEDC later abandoned its plea. The trial court denied the City's plea. The City appeals, contending the trial court erred in denying the plea because Briarwood failed to allege facts demonstrating a waiver of the City's immunity from suit. We reverse and render a judgment of dismissal of Briarwood's claims other than its breach of contract claim, which we remand to give Briarwood the opportunity to replead.

**Background**

In 1995, the City created the Freeport Economic Development Corporation under the Development Corporation Act.[1] In 2003, FEDC and the City entered into a Development Agreement with Freeport Waterfront Properties, L.P. (FWP). The purpose of the 2003 Development Agreement was to develop a marina in the City. Under the 2003 Development Agreement, FWP would acquire real property

---

[1] *See* TEX. LOC. GOV'T CODE §§ 501.001–.453 (West Supp. 2012).

2

to be used for the marina. One such parcel of real property designated in the Agreement came to be known as the "Henderson land" or "Henderson tract." The Henderson tract was a critical piece of land because, without it, the other tracts could not be utilized as a marina. Thus, the City agreed to use "its best efforts" to obtain and convey the Henderson land to FWP, including using its power of eminent domain to obtain the land, if necessary. The 2003 Development Agreement also provided that the City and FEDC would "execute, acknowledge and deliver, after the date hereof, without additional consideration, such further assurances, instruments and documents, and shall take further actions, as [FWP] or the City shall reasonably request of the other in order to fulfill the intent of this Agreement and the transactions contemplated thereby."

Later, with the City's approval, FWP assigned its interest under the 2003 Development Agreement to Freeport Marina, L.P. Although the record does not show their specific relationship, it is undisputed that Freeport Marina and Briarwood are "affiliates" of FWP, as that term is defined in the 2003 Development Agreement.[2]

---

[2] The 2003 Development Agreement defines "affiliate" as follows:

3

FEDC acquired several tracts of land and sold them to Freeport Marina pursuant to the 2003 Development Agreement. FEDC also instituted eminent domain proceedings to acquire the Henderson tract, but, in May 2006, FEDC settled with the owners of the Henderson tract. Their settlement agreement included an agreement to move an existing business on the land to another location and to hold the deed to the Henderson tract in escrow until the move was completed. FEDC spent $900,000 moving the business, acquired the deed to the Henderson tract from escrow, and filed the deed on January 12, 2009.

In the meantime, however, other plans and agreements relating to the marina were going forward. On February 8, 2007, FEDC and Freeport Marina entered into another Development Agreement related to the marina. Under the 2007 Development Agreement, FEDC assumed the duties and obligations of the "Project Developer" under the 2003 Development Agreement. FWP was the original Project Developer under the 2003 Development Agreement, but had assigned its interest to Freeport Marina. Also on February 8, 2007, FEDC and Freeport Marina entered into a Lease Agreement for the marina facility.

---

"Affiliate" of a specified person means a person who (a) is directly or indirectly controlled by, or under common control with, the specified person; (b) owns directly or indirectly thirty-five percent (35%) or more of the equity interests of the specified person; or (c) is a general partner, officer, director, non-financial institution trustee or fiduciary of the specified person or of any person described in (a) or (b).

4

At about this same time, Briarwood and FEDC entered into a Ground Lease Agreement, in which FEDC leased the real property for the marina from Briarwood. The 2007 Development Agreement also required the owners of the Henderson land to lease it to FEDC. The City was not a party to the 2007 Development Agreement, the Lease Agreement, or the Ground Lease Agreement.

On May 15, 2007, FEDC director Lee Cameron sent an email to Walker Royall, who controlled FWP, Freeport Marina, and Briarwood and was designated as the representative for Briarwood in the 2007 Development Agreement. Cameron explained to Royall that FEDC's agreement to move the owners of the Henderson tract was "predicated on you buying the Henderson land for $200,000." He further informed Royall that the deed would be in escrow until the move was complete, that the FEDC Board and the City Council were aware of and concurred in the decision to sell the Henderson land to Briarwood for $200,000, and that the FEDC Board "is unanimous in their support of the sale to Briarwood and that is not about to change." Cameron concluded by stating, "I think this E-mail will establish the intent of [F]EDC and I think it is legally binding. You have nothing to worry about." On May 24, 2007, the FEDC board met and unanimously approved the sale of the Henderson land to Briarwood for $200,000. However, FEDC did not sell the land to Briarwood. Instead, on October 9, 2009, FEDC sold it to the City.

Briarwood sued FEDC and later added the City as a defendant. Shortly thereafter, FEDC sued Royall, FWP, Freeport Marina, Briarwood, and others, and the trial court consolidated the two suits. Both the City and FEDC filed a plea to the jurisdiction, which FEDC later abandoned. Briarwood also moved for summary judgment for specific performance, seeking to have the Henderson land transferred to Briarwood. The trial court denied both the City's plea to the jurisdiction and Briarwood's motion for summary judgment. The City appealed the denial of its plea to the jurisdiction. *See* TEX. CIV. PRAC. & REM. CODE ANN. 51.014(a)(8) (authorizing interlocutory appeal of denial of governmental entity's plea to the jurisdiction).

## Discussion

### A. Sovereign and Governmental Immunity

Sovereign immunity generally protects the state against lawsuits for money damages; governmental immunity provides protection to subdivisions of the state, including cities, and is derived from the state's sovereign immunity. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011); *Smith v. Galveston Cnty.*, 326 S.W.3d 695, 697–98 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) and *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004)). "Sovereign immunity has two components: immunity from suit and immunity from liability." *Williams*,

6

353 S.W.3d at 134. Immunity from suit exists, and the state may not be sued, absent an express waiver of immunity by the Legislature. *Id.* Governmental immunity from suit may also be waived, "but we defer to the Legislature to do so by statute." *Id.* Immunity from liability protects the state from money judgments, but is a defense and not a jurisdictional bar as is immunity to suit. *Id.*

Both forms of immunity must be waived in order to recover a money judgment against the state. *See id.* A governmental entity may waive immunity from liability by entering into a contract with a private party, but unless the Legislature has waived immunity from suit, no suit can be maintained. *See id.* Conversely, "immunity from liability shields the state from money judgments, even when the Legislature has given consent to sue." *Id.*

## B. Plea to the Jurisdiction

A plea to the jurisdiction based on governmental immunity from suit is a challenge to the trial court's subject matter jurisdiction. *See City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–26 (Tex. 2004). "A plea questioning the trial court's jurisdiction raises a question of law that we review de novo." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

When, as in this case, a plea to the jurisdiction challenges the sufficiency of the plaintiff's jurisdictional pleadings, we must determine whether the plaintiff has

alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 226. We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Id.*; *Smith*, 326 S.W.3d at 697–98. The party asserting the plea must show that, "even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Anderson v. Am. Fed'n of Gov't Emps., AFL-CIO*, 338 S.W.3d 709, 712–13 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). If the pleading contains facts that do not affirmatively demonstrate, but also do not affirmatively negate, jurisdiction, "it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings." *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d. at 2226–27). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend its petition. *Smith*, 326 S.W.3d at 698 (citing *Miranda*, 133 S.W.3d at 227).

## C. Analysis

The City contends that Briarwood cannot allege facts showing a waiver of the City's immunity from suit and, because the jurisdictional defects cannot be cured, all of Briarwood's claims should be dismissed with prejudice. In response,

Briarwood asserts multiple bases for affirming the trial court's order.[3]  We will address Briarwood's arguments for wholesale affirmance and then analyze whether the City affirmatively negated jurisdiction with respect to each of Briarwood's claims.

### 1.    Waiver of Immunity by Conduct

Relying on *Texas Southern University v. State Street Bank & Trust Co.*, 212 S.W.3d 893, 908 (Tex. App.—Houston [1st Dist.] 2007, pet. denied), Briarwood asserts that the City waived its immunity by conduct.  The City responds that waiver by conduct is no longer viable in light of *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) and, that, even if it were, it would not apply here because the facts in this case are not like the "extraordinary factual circumstances" involved in *Texas Southern University*.

We do not address the City's contention that *Sharyland* categorically sounded the death knell on waiver of immunity by conduct, because we agree with the City's assertion that, even if it were possible to establish such a waiver in any case, it is not possible here.  In *Texas Southern University*, the governmental unit

---

[3]    Although Briarwood argued in the trial court that Texas Rule of Civil Procedure 39 operates to waive the City's immunity, it has abandoned that argument on appeal.  Accordingly, we do not address it. *See Wojcik v. Wesolick*, 97 S.W.3d 335, 336–37 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing *Hall v. Tomball Nursing Ctr., Inc.*, 926 S.W.2d 617, 619 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that court of appeals need not address ground in motion for summary judgment that appellee abandons on appeal).

induced a private party into a contract with assurances, including a letter from its general counsel, that a contract would be valid and enforceable, and then, after receiving equipment and services worth $13 million, claimed the contract was not valid and refused to pay. 212 S.W.3d at 908. This court distinguished prior Texas Supreme Court cases that refused to find waiver of immunity by conduct because "[n]either case involved a situation in which a contract had been fully performed and the State refused to pay anything." *Id.* at 905.

This case differs from *Texas Southern University* in two important respects. First, the record contains no evidence that Briarwood has fully performed and conferred millions of dollars worth of benefits upon the City, only to be denied any return consideration. Second, in *Texas Southern University*, the governmental entity claiming immunity was the very entity that had assured the plaintiff that the contract would be valid and enforceable. *See id.* Here, the assurances did not come from the City, the entity Briarwood seeks to charge with a waiver by conduct; instead, the email suggesting the proposed transaction was "legally bindng" and that Royall had "nothing to worry about" came from FEDC, which, according to Briarwood, has "already conceded subject-matter jurisdiction."

We conclude that waiver by conduct, if it can ever be established, does not exist here. *Sharyland*, 354 S.W.3d at 414; *Tex. S. Univ.*, 212 S.W.3d at 908.

10

## 2.     The City "stepped into the shoes" of FEDC

Briarwood argues that, under Texas law, the City, having bought the Henderson tract with knowledge of Briarwood's interest in it, steps into FEDC's shoes and can be compelled to convey title to Briarwood. Therefore, Briarwood reasons, the City should also step into the shoes of FEDC in jurisdictional terms, and FEDC's submission to the trial court's subject matter jurisdiction should operate to waive immunity and create jurisdiction with respect to the City.

Briarwood cites several cases supporting its claim that when a seller breaches a contract for the sale of land by selling it to a third-party purchaser with knowledge of the previous contract, then the subsequent purchaser stands in the shoes of the original seller and may be compelled to convey title to the first purchaser. *See Antwine v. Reed*, 199 S.W.2d 482 (Tex. 1947); *Langley v. Norris*, 173 S.W.2d 454 (Tex. 1943); *Abraham Inv. Co. v. Payne Ranch, Inc.*, 968 S.W.2d 518 (Tex. App.—Amarillo 1998, pet. denied); *Gohlke v. Davis*, 279 S.W.2d 369 (Tex. Civ. App.—San Antonio 1955, writ ref'd n.r.e.). But none of these cases supports the proposition that *a governmental entity* that purchases real property with knowledge of a previous contract to sell the land to a third party *waives immunity* with respect to a claim for specific performance made by the third party. Nor has Briarwood cited statutory authority indicating the Legislature has waived immunity in this circumstance. *See Williams*, 353 S.W.3d at 134

11

("[G]overnmental immunity can be waived, but we defer to the Legislature to do so by statute."); *see also Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 857 (Tex. 2002) ("[I]t is the Legislature's sole province to waive or abrogate sovereign immunity."). Because we must defer to the Legislature to do so, we reject Briarwood's assertion that the City's mere purchase of the Henderson tract from FEDC waived the City's immunity with respect to claims relating to that property.

**3. Did the City Negate Jurisdiction with respect to each of Briarwood's Claims?**

**a. *Breach of contract***

The City contends that Briarwood's contract claim should be dismissed with prejudice on the basis that "Briarwood does not allege—nor could it—that Briarwood and the City were parties to any contract or agreement." Chapter 271, Subchapter I, of the Local Government Code provides a waiver of immunity for breach of certain contracts. *See* TEX. LOC. GOV'T CODE ANN. §§ 271.151–.160 (West 2005 & Supp. 2012). The Supreme Court has held that three elements are required to waive immunity under section 271.152:

> (1) the party against whom the waiver is asserted must be a "local governmental entity" as defined by section 271.151(3),
>
> (2) the entity must be authorized by statute or the Constitution to enter into contracts, and

12

(3) the entity must in fact have entered into a contract that is "subject to this subchapter," as defined by section 271.151(2).

*Williams*, 353 S.W.3d at 134–35. The statute defines a "[c]ontract subject to this subchapter" as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity."[4] TEX. LOC. GOV'T CODE ANN. § 271.151(2).

The City argues that section 271.151(2) cannot waive immunity here because Briarwood is not a party to a written contract with the City. Briarwood's live pleading alleges, generally, that the City breached the 2003 Development Agreement by failing to use its best efforts to convey the Henderson tract to Briarwood. However, it is undisputed that Briarwood is not a party to that agreement—the parties to the 2003 Development Agreement are the City and FWP. Briarwood did not claim, in its pleading, to be a third-party beneficiary under the 2003 Development Agreement. Nor did Briarwood plead any other theory that would allow it, a non-party to the agreement, to sue the City for the contract's alleged breach.

Recognizing this pleading deficiency, Briarwood argued that the trial court's denial of Briarwood's summary judgment motion indicates the trial court

---

[4] "Services" includes development contracts like the one at issue in this case. *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 839 (Tex. 2010).

13

determined there is a fact issue about whether a contract between Briarwood and the City exists. Briarwood reads too much into the trial court's denial of the motion for summary judgment. Given the absence of findings related to the summary judgment ruling, the most that can be inferred from it is that the trial court determined that Briarwood failed to carry its burden to conclusively establish its entitlement to specific performance.

For the first time at oral argument, Briarwood asserted that it should be allowed to assert a breach of contract claim against the City under a third-party beneficiary theory. Some authority supports Briarwood's contention that a third-party beneficiary's claim for breach of contract may fall within the waiver of immunity authorized by section 271.152. *See Galveston Indep. Sch. Dist. v. Clear Lake Rehab. Hosp., L.L.C.*, 324 S.W.3d 802, 810 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("[W]hen a governmental entity and a contracting party enter into a contract subject to subchapter I and denominate a third-party beneficiary of that contract, the third-party beneficiary's claim for breach of contract falls within the waiver of immunity authorized under section 271.152.") (quoting *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006)). And we are mindful that we must interpret Briarwood's pleadings liberally in favor of jurisdiction. *Miranda*, 133 S.W.3d. at 226. Thus, although the City correctly points out that

Briarwood's live pleading does not plead a waiver of immunity with respect to the breach of contract claim, and thus does not affirmatively demonstrate the trial court's jurisdiction over that claim, either by pleading Briarwood's third-party beneficiary status or otherwise, we are obligated to construe the pleadings liberally in Briarwood's favor. The City did not negate the possibility that Briarwood could, if allowed to replead, affirmatively demonstrate jurisdiction under a third-party beneficiary theory. Because the pleadings neither affirmatively demonstrate nor affirmatively negate jurisdiction over Briarwood's claim for breach of contract against the City, we conclude we must remand for the trial court to allow Briarwood a reasonable opportunity to amend its pleadings to allege a breach of contract claim against the City. *See Galveston Indep. Sch. Dist.*, 324 S.W.3d at 810–11 (noting that governmental entity may waive immunity by entering into contract subject to Chapter 271 and denominating third-party beneficiary of  that contract); *Kirwan*, 298 S.W.3d at 621 (quoting *Miranda*, 133 S.W.3d. at 227); *cf. Solis v. City of Laredo*, 353 S.W.3d 528, 533 (Tex. App.—San Antonio 2011, no pet.) (affirming trial court's order granting plea to jurisdiction where record conclusively established nonexistence of only contract upon which  plaintiff purported to sue City).

15

**b.** *Intentional Torts (Common-Law Fraud, Statutory Fraud, and Trespass)*

The City also contends that Briarwood has failed to allege a waiver of immunity for intentional torts. The City correctly points out that neither section 271.157 of the Local Government Code nor section 101.057 of the Civil Practice and Remedies Code, which waive immunity for certain breach of contract claims and tort claims, respectively, waives immunity for intentional torts. *See* TEX. LOC. GOV'T CODE ANN. § 271.157 (West 2005) ("This subchapter does not waive immunity to suit for a cause of action for a negligent or intentional tort."); TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2) (West 2011) ("This chapter does not apply to a claim . . . arising out of assault, battery, false imprisonment, or any other intentional tort . . . .").

Briarwood does not respond to the City's plea to the jurisdiction or appellate brief concerning the intentional torts. Because Briarwood failed to demonstrate a waiver of immunity with respect to its claims for common-law fraud, statutory fraud, and trespass claims, we conclude the trial court erred in denying the City's plea to the jurisdiction with respect to these claims. *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 219 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating "the Legislature has not waived immunity with respect to the intentional tort of fraud"); *Harris Cnt.y v. Cypress Forest Pub. Util. Dist. of Harris Cnty.*, 50

16

S.W.3d 551, 554 (Tex. App.—Houston. [14th Dist.] 2001, no pet.) (holding immunity not waived for intentional tort of trespass).

## Conclusion

We reverse the trial court's denial of the City's plea to the jurisdiction and render judgment dismissing with prejudice Briarwood's claims for common-law fraud, statutory fraud, and trespass. We remand the case to give Briarwood an opportunity to replead a breach of contract claim against the City.[5]


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

---

[5] Although the City urges us to dismiss Briarwood's "attorney's fee claim" with prejudice, Briarwood shall have the opportunity, on remand, to amend its pleadings concerning the remedies, including attorney's fees, it seeks for the City's alleged breach of contract. *See Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 146 (Tex. App.—Dallas 2011, no pet.) (citing *Huff v. Fidelity Union Life Ins. Co.,* 312 S.W.2d 493, 501 (Tex. 1958)) (claim for attorney's fees is not independent cause of action; rather, it is remedy available, in some circumstances, to prevailing party).